liHIGHTOWER, Judge.
After Robbin Jean Scott pled guilty to a reduced charge of manslaughter, La.R.S. 14:31, the district court imposed twenty-one years of hard labor incarceration. Defendant now appeals that sentence as excessive. We affirm.
Facts
On the night of May 21, 1994, Scott and three friends stood in the yard of a house on East 73rd Street in Shreveport, when Timothy Pace and an unidentified man drove up asking to purchase marijuana. A member of the group, Dexter Black, soon ordered Pace out of the ear at gunpoint. Although the man begged not to be hurt, Black hit him in the head and pushed him into the trunk of the vehicle. The assailant then drove off in the automobile, after forcing the unknown passenger to flee and advising him to forget everything that had transpired.
After a few minutes, Black returned to the residence. At that time, Scott and her other two companions got into the car. Apparently, at some point while riding around in the vehicle, the group made the decision to rob Pace, shoot him, and dump his body into the river. En route to carry out that plan, however, the driver stopped to purchase fuel at a nearby gas station. At that location, Pace attempted to escape from the vehicle by yelling and kicking out the back seat. Unfortu *666 nately, when he had crawled about halfway out of the rear compartment, defendant thwarted his effort by hitting him in the head with a pistol, a fact she would later admit to police. She then handed the weapon to Black, who shot the man at close range five times in the head, neck, and torso. The four occupants of the automobile then fled from the scene. Approximately a week later, Pace died in the hospital from the gunshot wounds.
Following Scott’s subsequent apprehension, a Caddo Parish grand jury indicted her for second degree murder, La.R.S. 14:30.1, as a principal to the killing. Later, in December 1994, she pled guilty to a reduced charge of manslaughter. Thereafter, upon considering the presentence investigation report (PSI) and the Louisiana Felony Sentencing Guidelines, the trial judge determined that defendant fell within grid cell 1-G which recommended sixty to ninety months of incarceration. Even so, noting that the Rcase presented an atypical manslaughter involving obvious cruelty, the district court imposed a sentence of twenty-one years at hard labor. Following unsuccessful motions to reconsider by both defendant and her attorney, this appeal ensued.
Discussion
Defendant contends that the lower court erred in both imposing a constitutionally excessive sentence and in departing from the Louisiana Felony Sentencing Guidelines recommendation. Having timely moved for reconsideration under La.C.Cr.P. Art. 881.1, she is entitled to appellate review of the sentence imposed. La.C.Cr.P. Art. 881.2(A); State v. Wilson, 626 So.2d 824 (La.App. 2d Cir.1993); State v. Tracey, 612 So.2d 984 (La.App. 2d Cir.1993).
Although it must consider the guidelines, a trial court has complete discretion to reject those standards and impose any sentence which is not constitutionally excessive and still within the statutory range for the crime of conviction. State v. Smith, 93-0402 (La. 07/05/94), 639 So.2d 237. The trial judge need only state the considerations taken into account and the factual basis for the sentence imposed. La.C.Cr.P. Art. 894.1; Id. When such compliance occurs, our review is limited to constitutional excessiveness. State v. Smith, supra.
The present record reflects a carefully and fully articulated factual basis for the sentence, including an evaluation of both the aggravating and mitigating circumstances. Although noting in mitigation that Scott is a youthful first felony offender, the trial judge concluded the aggravating circumstances outweighed that consideration and demanded a sentence longer than recommended by the guidelines. In making that decision, the district court emphasized defendant’s intentional cruelty toward the victim, noting that she and her three companions kept the abduetee in the trunk while riding around in the stolen car. Later, when their prisoner attempted to escape, defendant hit him in the head with the pistol before handing the gun to an accomplice so that he could deliberately shoot the defenseless man. Beyond Scott’s active participation in the heinous homicide, lathe court also observed that she is a high school dropout with no employment history and had been allowed to plead to a lesser offense.
Relying upon State v. Walters, 25,587 (La.App. 2d Cir. 01/19/94), 630 So.2d 1371, writ denied, 95-0422 (La. 06/16/95), 655 So.2d 340, defendant argues that the trial court erred in considering cruelty as an aggravating factor in a manslaughter case. Unfortunately, Scott is confused. Granted, the cited Walters opinion indicated that virtually all homicides are violent. That does not mean, however, that the degree of deliberate cruelty displayed toward the present victim will be found in the usual manslaughter. Instead, this is a factor specifically listed as a legitimate guidelines consideration. See La. S.G. § 209(B)(1). And, as such, it alone will suffice to justify an upward departure from the recommended grid cell. See State v. Walters, 26,647 (La.App. 2d Cir. 12/07/94), 648 So.2d 7.
Having found that the trial court articulated an adequate factual basis for the sentence, we limit further review to the question of constitutional excessiveness. See State v. Smith, supra. For a discussion of the parameters applied in that determination, see *667 La. Const. Art. I, § 20; State v. Lobato, 603 So.2d 739 (La.1992); State v. Barberousse, 480 So.2d 273 (La.1985); State v. Square, 433 So.2d 104 (La.1983); State v. Bonanno, 384 So.2d 355 (La.1980).
Considering the present circumstances in their totality and the serious nature of the acts committed, we conclude that Scott’s twenty-one year hard labor sentence is not excessive. As previously noted, it cannot be gainsaid that defendant demonstrated deliberate and atypical cruelty by participating in confining the victim in the trunk while utilizing his vehicle, and by striking him to prevent his escape prior to a second person inflicting the fatal shots. Importantly too, by pleading guilty to the lesser charge of manslaughter, Scott significantly reduced her potential exposure from the mandatory life sentence for second degree murder. Thus, this case parallels similar sentences imposed, and upheld, when egregious Circumstances have surrounded the perpetration of manslaughter. See, e.g., State v. Walters, swpra at 648 So.2d 7; State v. Taylor, 91-2496 14(La.App. 4th Cir. 03/29/94), 635 So.2d 416; State v. Anseman, 607 So.2d 665 (La.App. 5th Cir.1992), writs deified, 613 So.2d 989, 990 (La.1993); State v. Mickey, 604 So.2d 675 (La.App. 1st Cir.1992), writ denied, 610 So.2d 795 (La.1993); State v. Harrison, 529 So.2d 78 (La.App. 3d Cir. 1988), writ denied, 533 So.2d 16 (La.1988).
Further, contrary to defendant’s assertions, the offense at hand can easily be differentiated from the usual homicide lacking deliberate cruelty to the victim and the commission of another offense. See generally State v. Freelon, 26,938 (La.App. 2d Cir. 05/10/95), 655 So.2d 687; State v. Taylor, 535 So.2d 1146 (La.App. 2d Cir.1988). Accordingly, in this instance, the imposition of a sentence requiring only a year more than half the maximum term[1] neither shocks our sense of justice nor constitutes an abuse of the trial court’s great discretion. The assigned errors, thus, are without merit.
Conclusion
For the foregoing reasons, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Although the maximum sentence for manslaughter had long been twenty-one years at hard labor, recent legislative amendments to La.R.S. 14:31(B) have increased that upper limit to forty years. See Acts 1992, No. 306, § 1.