NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 08-1299

STATE OF LOUISIANA

VERSUS

T. S., JR.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 06-231858
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

AFFIRMED.

J. Phillip Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
Counsel for Plaintiff/Appellee:
State of Louisiana

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**T. S., Jr.**

**EZELL, JUDGE.**

The State charged the Defendant, T.S., by indictment with aggravated incest.[1] On February 11, 2008, he entered a plea of "no contest" to the charge.[2] He was sentenced on May 22, 2008, to twenty-years at hard labor.

On June 4, 2008, the Defendant filed a motion to reconsider sentence which the trial court denied on June 20, 2008, writing, "There is no basis for the reconsideration and it is denied."

On appeal, the Defendant asserts his twenty-year sentence is unconstitutionally harsh and excessive.

## FACTS

The factual basis set forth by the State at the plea proceeding indicated that between June 2005 and July 2006, T.S., the biological father of the victim, N.S., on numerous occasions attempted to "insert his penis in her vagina," and he did place his "hands and fingers in her vagina," after giving N.S. alcohol and having "blown smoke in her face." An examination of N.S. at the St. Martin Parish Hospital revealed injuries consistent with the allegations made by N.S.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

At the time of the commission of the offense, La.R.S. 14:78.1(E)(1) stated:

---

[1] In accordance with La.R.S. 46:1844(W), initials have been used to protect the privacy of the Victim. The Defendant's initials were used as the charge was aggravated incest.

[2] Although the Defendant stated he was pleading "no contest" to the charge, the transcript of the plea proceeding reflects after the factual basis was given, the Defendant admitted the factual allegations set forth by the State were true.

In addition to any sentence imposed under Subsection D, the court shall, after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense.

Failure by the lower court to determine the Defendant's financial resources or ability to pay for the Victim's reasonable cost of counseling would be cause to raise a question of an illegally lenient sentence. However, because the Defendant did not raise this issue, this court will not address the matter in this case.

**ASSIGNMENT OF ERROR NUMBER ONE**

The Defendant asserts his near maximum sentence is excessive.

The Defendant filed a motion to reconsider sentence asserting the trial court failed to take into consideration all of the mitigating factors set forth by the sentencing guidelines and that the facts did not support the excessiveness of the sentence. On appeal, the Defendant points out that the record indicated he had an "insignificant, misdemeanor criminal record" and this was his first felony conviction. The Defendant asserts he was very likely to respond to probationary treatment. He argues the trial court's justification for the sentence, that the child was vulnerable because of the father-daughter relationship, was insufficient to justify the maximum sentence, since that was the nature of the crime. The Defendant claims the trial court "completely disregarded the mitigating factors" in this case. The Defendant asserts the sentence was unconstitutionally excessive given the facts of the case.

The State counters that the trial court considered the mitigating circumstances such as the Defendant, a first felony offender, was a fifty-one-year-old man suffering from alcoholism, multiple sclerosis, and was on medication. Additionally, the State points out the aggravating factors considered by the trial court such as the fact that the Defendant was given custody of the Victim after she was sexually abused by another related family member and that he was her biological father. Furthermore,

2

in support of the twenty-year sentence imposed by the trial court the State cites *State v. Wall*, 33,385 (La.App. 2 Cir. 6/21/00), 764 So.2d 1191; *State v. Downs*, 30,348 (La.App. 2 Cir. 1/21/98), 705 So.2d 1277; and *State v. Stiles*, 31,854 (La.App. 2 Cir. 2/24/99), 733 So.2d 612, *writ granted*, 99-1528, 99-1753 (La. 5/16/00), 751 So.2d 865, affirmed, 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158.

In *State v. Jacobs,* 07-1370, pp.7-8 (La.App. 3 Cir. 6/5/08), 987 So.2d 286, 291-92 (alterations in original) this court explained in pertinent part:

> We have set forth the following standard to be used in reviewing excessive sentence claims:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La.2/1/02), 808 So.2d 331.
>
> In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, we have also held:
>
> > [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must

3

be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p.4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-0562 (La.5/30/03), 845 So.2d 1061.

The penalty for aggravated incest at the time of the commission of this offense was a fine not more than $50,000.00 or imprisonment, with or without hard labor, for not less than five years nor more than twenty years or both. La.R.S. 14:78.1.

At the sentencing hearing, the Defendant made the following statement:

Well, you know, I've got that M.S. and, you know, I take medications and all. And, you know, with my drinking and everything, you know, I'm sorry for what happened, you know, that they're accusing me of. And, you know, with me drinking and stuff like that, I didn't really know what's going on, you know. I'm just - I'm sorry that it happened and it come to this point, you know.

When imposing sentence, the trial court set forth the following reasons:

All right. Then the pre-sentence investigation report will be filed.

This matter comes before the court initially on a bill of information against [T.S.] for aggravated incest of his natural daughter, under Louisiana law, Revised Statute 14, Section 78.1.

The court observes from a review of the documents in evidence that the defendant was given custody of his daughter, [N.S.], in 1996 by the Office of Child Protection Services, because it had been alleged that [N.S.] had been sexually abused by a [J.R.], who at the time was involved with the family because he was the husband of [N.S.]'s maternal grandmother. So, at the time that [T.S.] gained custody of the child, he knew that the child had undergone or was given to him because of charges that she had undergone sexual abuse by [J.R.], who was a family member in the sense that he was married to [N.S.]'s maternal grandmother.

So, after he had obtained custody of the child, when the child was fifteen years of age, she reported sexual abuse, and [T.S.] was charged with the aggravated incest on October 28, 2006. He pled guilty on February 11, 2008 to aggravated incest. And the plea agreement was that

4

he was pleading guilty open-ended with a cap of 20 years and that the court would order a pre-sentence investigation.

The court took his guilty plea after informing him of his rights, ordered the pre-sentence investigation. The state and the defense have reviewed the pre-sentence investigation and find that it is accurate. And the court takes recognition of the contents of the pre-sentence investigation report relative to this case.

In addition to the things I've already said, the court considers that [T.S.] at the present time is 51 years of age. At the time that these acts were committed, he was a mature, grown adult who had facilities for understanding and reasoning for his actions. He was not a person who was demented, disabled, or insane at the time of these actions, and there's been no such plea in this case.

His prior record, his prior convictions are insignificant relative to this case. He's got a couple of misdemeanors, and those matters really are not very relevant to this particular case and have little influence on the court.

A lesser sentence than this court would give today would deprecate the seriousness of this particular crime.

Defendant's conduct during the commission of the crime manifested, in the opinion of this court, deliberate cruelty to the victim, [N.S.] First of all, of course, [N.S.] is his daughter, and these sexual actions were committed by her biological and natural father, which is abhorrent to begin with, just because of the relationship. At the time, he had custody, and the custody was given to him because the child had undergone previous sexual abuse by a related member - a related family member in the sense of the gentleman who was married to her grandmother. And so, in the circumstances here, [T.S.] knew that the child had previous problems, previous incidents of sexual abuse from a related family member and would be able and was able at the time that the child came into his custody to understand the suffering that she would be having at that period of time from the previous sexual abuse. And of course, he also accepted at that time the custody of the child, which means that the child was in his custody, was under his authority and under his supervision and control. So that the cruelty here arose out of the fact that he was the custodian of his natural daughter, he had custody of his natural daughter, he had control and supervision and direction over her actions. So that it put her in a particularly perilous situation for someone who was going to sexually abuse her in this relationship. And of course, it's much more grievous and it's much more traumatic to her, I'm sure, because of that relationship. This is not a stranger; this is a person who is supposed to love her, to raise her, to nurture her, to encourage her, to educate her. And instead, she is faced with the same type or similar type of abuse which she had previously had with someone else, resulting in [T.S.] having her custody.

5

I also consider the fact of the tender years -the tender age of [N.S.] At the time she brought forward the allegations, she was fifteen. But my indication from reviewing everything is that this went on for some period of time before she was fifteen. So she was even younger.

[T.S.] also knew or certainly should have known the vulnerability of [N.S.], his child, and her young and tender age; her youth and relationships, and used that vulnerability in order to effect his crime in this matter. His relationship and his custodial direction over the child facilitated his crime, because he had direct control, direct supervision, direct custody over his daughter. So not only the court giving him custody gave him those relationships, but also they were natural as a biological parent.

All of these things placed her in a particularly perilous position, a position in which the parent usually would protect the child in this type of a situation. But this parent, [T.S.], used those positions in order to facilitate the sexual abuse.

The offense involved multiple incidents of abuse for which separate sentences will not be given.

The court views that this particular crime for which [T.S.] is here today is an inexcusable abuse of relationship of a father and child.

[T.S.] today says to the court, though the court notes that it's nowhere before today, that his drinking and alcoholism was part of the reason involved in this abuse. Well, that, to this court, sounds like an excuse, but not a reason. A person has some control over what they drink and some control over whether or not they become intoxicated. To say that one becomes intoxicated or abuses alcohol in order to facilitate the sexual abuse of their child is not something that the court would consider in this case, since there is no proof of it and no testimony of it, to excuse [T.S.] for his actions.

So these are the things that the court considers. And of course, in our society, we consider the relationship of a father and a child to be a sacred relationship. And it's one of the types of relationships which we are shocked and appalled as a society when it is violated in a sexual manner such as in this case. And so that -it's an appalling and an unbelievable situation for a parent to abuse their female minor child, a father to abuse a child sexually in this way. And it's something that our society looks down upon as being far from the norm between a parent and a child, to such extent that there are serious consequences and serious penalties for these types of crimes.

So the court finds that [T.S.] is sentenced to twenty years at hard labor.

6

In *State v. Wall*, 764 So.2d 1191, the defendant sexually molested his two stepdaughters and pled guilty to one count of aggravated incest in exchange for the state's dismissal of the second count. The trial court sentenced the defendant, a first felony offender, to twenty years at hard labor, a fine of $50,000, and ordered payment of $1,000 in counseling costs. The record indicated that the defendant, on three to four occasions, fondled and kissed the chests, and rubbed the vaginal areas of his two stepdaughters, who were then seven and eight years old. Additionally, he digitally penetrated the children's vaginas during some of these incidents. On appeal, the defendant asserted his sentence was excessive. However, the court found the sentence was not excessive, stating in pertinent part:

> We are unimpressed with the fact that sexual intercourse did not occur under the facts of this case. The list of prohibited acts under La. R.S. 78.1 B includes not only sexual intercourse, but sexual battery, indecent behavior with a juvenile, and lewd fondling and touching as well. Because the statute in no way grades the offenses, we believe that the legislature intended to recognize each prohibited act as equally egregious. Wall is a mature adult who intentionally abused a position of trust and responsibility without regard to the lifelong harm he would cause to the two victims of his perverted, abhorrent desires. He committed these lewd, lascivious and socially repulsive acts of sexual abuse upon the minor victims repeatedly, over a lengthy period of time, and exhibited no remorse for the offenses. He obtained a substantial benefit from his plea bargain, which reduced his sentencing exposure by half. There is no excuse or justification for Wall's criminal conduct.

*Id*. at 1194.

In *State v. Downs*, 30,348 (La.App. 2 Cir. 1/21/98), 705 So.2d 1277, the defendant was charged with two counts of aggravated incest for offenses committed upon his thirteen-year-old stepdaughter and his nine-year-old natural daughter. The defendant plead guilty to one of the counts and was sentenced to the maximum sentence of twenty years at hard labor. On appeal, the defendant argued his sentence was excessive. The court affirmed the sentence, explaining in pertinent part:

> The jurisprudence holds that a maximum sentence is appropriate for an offender who sexually abuses his minor child or stepchild. See,

7

e.g., *State v. Phillips*, 29,020 (La.App.2d Cir. 12/11/96), 685 So.2d 565, in which this court held that a maximum 20-year sentence for attempted forcible rape is not constitutionally excessive for a mature, first felony offender who pleaded guilty to committing that offense upon his 10-year-old stepdaughter. And see *State v. Rubalcava*, 28,325 (La.App.2d Cir. 5/8/96), 674 So.2d 1035, in which we affirmed a 20-year sentence upon a defendant, age 32, who sexually abused his step granddaughter. See also *State v. Childs*, 466 So.2d 1363 (La.App. 3d Cir.1985), in which it was held that the rape of one's underage daughter is among the most serious violations of the crime of forcible rape and, based solely on the nature of the offense, a maximum sentence can be imposed appropriately.

. . .

In the instant case, the trial court considered a PSI report which included information on the important elements to be considered prior to imposing punishment. Included in the report was the defendant's statement that "[i]t happened the way it happened. I'm sorry for what happened. I have no answer to why it happened. I have relived it over and over and ask myself why. . . . No excuse for what I did."

The court observed the gravity of this offense. The defendant had been arrested in 1986 for aggravated rape but no charges had been filed. Except for that, the defendant had no criminal record. The court noted that the offense of conviction involved the defendant's stepdaughter and that the relationship had been ongoing for an extended period of time. The court considered the victim impact statements from both children which indicated that both had been sexually abused by the defendant. The court concluded that the defendant's actions had a "horrible impact on these two young girls."

Considering all the circumstances, we do not find the sentence to be shocking to the sense of justice. The mature, healthy defendant abused a position of trust and responsibility without regard to the lifelong harm he could cause to the young victim. There is no showing of excuse, justification or mitigation for such misconduct. He obtained a substantial benefit from the dismissal of a second charge of aggravated incest - this one involving his own biological child - through his plea bargain. We do not find an abuse of discretion. The sentence is not constitutionally excessive, and it is adequately supported by the record.

*Id*. at 1279 (footnote omitted)(alteration in original).

In *Stiles,* 733 So.2d 612, the defendant was originally charged by bill of information with two counts of aggravated incest with his minor daughter. Over a period of several years, he admitted having sexual intercourse fifteen times and oral sex two or three times with his biological eleven-year-old daughter. He pled guilty

8

to those charges and was sentenced to consecutive sentences of twenty years at hard labor. The defendant appealed asserting his sentences were excessive. The court affirmed the sentences. *Id.*

The defendant in *Stiles* sought a writ of certiorari which was granted by the supreme court, and in *State v. Stiles*, 769 So.2d 1158, the supreme court upheld the consecutive maximum sentences imposed for the multiple counts of aggravated incest with the minor.

In *State v. G.M.W., Jr.*, 05-391 (La.App. 3 Cir. 11/2/05), 916 So.2d 460, the State filed two separate indictments under separate docket numbers against the defendant. Each bill charged the defendant with one hundred and thirty counts of aggravated incest. The defendant was accused of having sex with his two minor daughters between June 1, 2001 and May 23, 2003. A jury found him guilty as charged on all counts, and the court sentenced him to twenty years at hard labor on each count. The trial court ordered some of the sentences to run concurrently, subjecting the defendant to an eighty-year sentence. On appeal, the defendant complained his sentences were excessive. This court affirmed the sentences. *Id. See also*, *State v. S.D.G.*, 06-174 (La. App. 3 Cir. 5/31/06), 931 So.2d 1244, where this court affirmed the defendant's twenty-year sentence for aggravated incest.

The pre-sentence investigation report (PSI), which was reviewed by the trial court and filed into evidence at the sentencing hearing, reflected that the offense report from the St. Martin Parish Sheriff's Office indicated that the sexual abuse included the Defendant touching N.S.'s vagina with his mouth. Additionally, the report indicated that the smoke blown on N.S. was marijuana smoke.

Based upon the factual basis given by the State, review of the PSI report, the aggravating and mitigating circumstances set forth by the trial court at the sentencing hearing, the fact that the State only charged the Defendant with a single count of

9

aggravated incest when the Defendant committed multiple acts, and review of the cases with similar offenses and sentences, this court finds the trial court did not abuse its discretion in sentencing the Defendant to twenty years at hard labor.

Accordingly, this court finds this assignment of error lacks merit.

## CONCLUSION

The Defendant's sentence is affirmed.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3 Uniform Rules, Court of Appeals.